## TAYLOR v. RAILWAY EXPRESS AGENCY, Inc.
### No. 26376-L.

Circuit Court, Duval County.

May 5, 1959.

William D. Barfield, Jacksonville, for plaintiff.

Scott & Cox, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

The complaint herein is brought under chapter 769 of Florida Statutes of 1957, usually referred to as the Florida Hazardous Occupations Act. The plaintiff, Lewis Taylor, alleges his employment by defendant, Railway Express Agency, Inc., and that defendant was, on the date of the injury to plaintiff, engaged in the hazardous occupation of an express business.

The right to recover is predicated on the alleged negligence of the defendant in the following respects—1. Failure to furnish plaintiff a reasonably safe place to work. 2. Failure to warn plaintiff of dangers of which he was unaware. 3. Failure to furnish plaintiff reasonably safe tools and appliances with which to do the work. 4. Failure to furnish sufficient qualified fellow employees to do the work.

Defendant's answer denies the alleged negligence and the alleged consequences thereof and asserts that the sole proximate cause of plaintiff's injury was plaintiff's own negligence. Under the above-mentioned statute, unless plaintiff's negligence, if any, was the sole proximate cause of his injury, plaintiff is entitled to have a jury determine the issues under the comparative negligence feature of the act.

Relying on the pleadings in the file, photographs and plaintiff's deposition, defendant has moved for the entry of a summary judgment in its favor. The argument of counsel has been heard, their briefs studied, as well as the photographs, pleadings and deposition, and, resolving all the facts and inferences therefrom in plaintiff's favor, this court finds that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law.

The testimony of the plaintiff shows that on May 24, 1957, the date of the injury, plaintiff, a 59 year old colored man who was in his 16th year of employment by defendant as a casual laborer, went to work at 5 P. M.; about 9 P. M., he was engaged in unloading 5 gallon jugs of acid from an express car on track 26 of the Jacksonville terminal; each jug was contained in a wooden crate and the crate, jug and contents weighed approximately 40 or 50 pounds; the only other persons present were Roosevelt Johnson, another colored employee, and a "car loader," I. W. Tyre; the car was spotted at the "umbrella shed" and was well lighted; alongside the opening of the express car was a "float" or cart which is commonly seen around terminals and is used for handling and hauling express cargo and mail; the deck or loading surface of the float was "about a foot or a little better" below the floor of the car and while working plaintiff "straddled" the space (approximately 5 inches) between the float and the car, standing with his left foot on the float and his right foot in the doorway of the car; Roosevelt Johnson was bringing the crates to the middle of the doorway to plaintiff and plaintiff alone would put them on the float; he had done the same work many times before practically the same way; for about twenty minutes before the accident it had been raining and water had blown or fallen into the doorway of the express car and it was wet; plaintiff knew it was wet because he was working there; in his description of how the injury occurred, plaintiff said—"I was sliding the bottles out of the car on the float, I think the last one or next to the last one, the rain wet the door in the car and the metal, why, when they [I] put it down, my right foot slipped"; "... I just sat down trying to keep, protect the bottle so it wouldn't break"; "when I was hanging onto the bottle, when the bottle hit down in the float, when it hit together, my finger was caught be-

tween the two crates," inflicting the injury for which plaintiff seeks damages; plaintiff had unloaded other express cars when it was raining and the rain had gone into the express car door but his foot had never before slipped "just like that."

Counsel for plaintiff strongly urges that the foregoing facts, together with the photographs marked plaintiff's exhibits nos. 1, 2, and 3, which show the "umbrella shed," car and doorway where the injury occurred, make out a jury question as to whether or not —(1) gloves should have been furnished; (2) Mr. Tyre on observing the rain, should have stopped the work or instructed plaintiff to carry on his work in a different manner; (3) defendant should have so constructed the "umbrella shed" or the car so as to protect the doorway of the car from water; or (4) defendant should have provided better traction along the doorway from one extreme to the other, such as that provided at the end by the "grabiron." However, this court finds it unnecessary to rule on this contention because it finds from plaintiff's deposition that plaintiff has made certain admissions against his own interest that not only refute the allegations of negligence in the complaint, drafted by very able counsel, but also demonstrate that the sole proximate cause of the injury sustained was either plaintiff's own negligence, or mere accident, which precludes recovery.

Quoting the material portions of plaintiff's language from his deposition will illustrate how his admissions destroy his case—

Was there anything unusual at all about this particular express car that you were unloading that day, was there anything different about it from any other express car that you had ever unloaded?—No, sir, I don't guess—I don't recall of any.

Was there anything down there other than the rain that would have caused you to slip?—I don't recall of anything except the wet iron.

Do you feel that the wet iron was what caused your foot to slip?— Yes, I think it was.

\* \* \*

Was there anything unusual or strange about that float that you were using that particular day?—No, sir. I don't know of anything, just a regular—like all of them, I guess.

Was it the same kind of float that you had loaded and unloaded many times before?—Yes, sir, the same type of float; yes, sir.

Was that the same kind of an express car that you had loaded or unloaded many, many times before that?—Yes, sir, that's the same type of car.

So the only thing different was that the rain had fallen in there and wet the entrance way to the express car; is that right?—Yes, sir.

Lewis, did you have enough help in unloading this car, you and —— —— Yes, for the type of stuff we were unloading, I will say so.

You didn't need any additional help then in unloading the car?—Not in a reasonable length of time. See, some cars, there are some freight and some cars, we haven't very much time to get it to the other train——

I am talking about this particular car that you were unloading and these particular bottles you were unloading at the time.—No, we had plenty of time on those.

You had plenty of time and plenty of help?—They didn't need but two of us.

They just didn't need but two of you. Was Roosevelt Johnson a pretty good worker?—Yes, sir, he's all right.

He gave you all the help you needed in unloading that particular car?—Yes, sir.

*    *    *

Had you unloaded Seaboard Train No. 9 before that date of May 24, 1957?—Yes, sir. I worked that a number of times before that.

*    *    *

Then you had unloaded express cars on Track No. 26 before this happened?—Yes, sir.

Would you say many times or just a few times?—Well, many times, because I be with the company a long time. I couldn't remember the number of times and I couldn't recall what trains, but I unloaded many cars.

Lewis, did you know at the time of this accident on May 24, 1957, that when it rained out there in the terminal yards with an express car door open, the rain would go inside the express car door?—Yes, sir, I did.

Before this accident happened, had you ever unloaded any other cars when it was raining and the rain had gone into the express car door? Yes, sir, I had.

All of those express cars had that metal strip along the bottom there where the door slides, don't they?—Yes, sir.

Had your foot ever slipped on you before while you were unloading a car or loading it?—Not just like that, no, not just like that.

Had your foot ever slipped on that metal strip there that goes along on the bottom of the express car door before this accident happened?— Maybe it have, I—not that I remember that ever happened.

On May 24, 1957, just before this accident happened, Lewis, did you know that a leather sole would slip on wet metal?—Well, as a matter of fact, any sole will slip.

You knew if the metal was wet, you were liable to slip?—Your heel what holds it, not the sole of your shoe. In other words, you use your heels more so than you would any other part of your foot.

> Were you depending on your heel to keep you from slipping?—Well, there's a groove in the metal and your shoe heel is what holds. In other words, your weight is against on your heel mostly on that part of your foot.
>
> Did anybody out at Railway Express require or direct you to stand up there in the way you were standing with your right foot up there in the car and your left foot down on the float when you were unloading this particular car?—No, sir, nobody as I recall.

Counsel for plaintiff contends that most of the foregoing testimony is not admissible because it consists of opinions and conclusions, extracted from an uneducated party by the leading questions of a skilled lawyer. This court does not agree. The frankness of plaintiff is to be admired and his statements show he understood the questions and such admissions against interest must be received in evidence.

It has long been the undisputed rule of evidence in Florida that admissions against interest are admissible. To this effect see Sullivan v. McMillan (1890), 26 Fla. 543, 8 So. 450; Coons v. Pritchard (1915), 68 So. 225 (where a minor's admissions tending to show his knowledge and appreciation of the dangers of his employment were admitted) ; Robinson v. Pepper (1928), 116 So. 4; and Taylor v. Cory (1951), 53 So. 2d 820.

No Florida case has been found directly on the question of whether or not the ordinary rule which excludes testimony of a lay witness containing *opinions and conclusions* applies to admissions against interest. However, it is quite apparent that the overwhelming majority opinion is that admissions against interest are not inadmissible because they contain conclusions and opinions. For example, in Wigmore on Evidence, Third Edition, section 1053 (3), it is said—

> "The *Opinion Rule* (post, § 1917) does not limit the use of a party's admissions. The reason for that rule does not apply to a party's admissions. Moreover, every case presented in the allegations of pleadings and witnesses includes both facts and inferences; hence, the opponent's admissions will naturally range over both facts and inferences without distinction, e.g. as when a debtor's letter admits that he owes $20 out of the $45 claimed by the creditor. To extend the arbitrary trivialities of the Opinion Rule to parties' admissions would be the extreme of futility."

Reason and logic supports the soundness of that rule. There may be cases where the events and circumstances culminating in injury to a person may be indicative of a high degree of negligence of

which such injured person is totally unaware by reason of lack of knowledge, ignorance or the effect of the injury itself, but this is not such a case. Here is a simple accident involving a mashed finger received in a manner as obvious to plaintiff as it can ever be; his right to recover must be based on a showing of negligence on the part of defendant; using words of a few syllables, plaintiff tells a straightforward story of his injury that wholly fails to show any degree of actionable negligence on the part of defendant; no other evidence has been offered by counter-affidavits, depositions, or otherwise, except photographs that do not speak or contradict the admissions of plaintiff. There may be much that counsel for plaintiff can argue and suggest as *possibilities* on which liability should rest but there is no evidence which rises to the degree of competency required to raise a genuine issue as to a material fact.

Accordingly, it is ordered and adjudged that defendant's motion for summary judgment be, and the same is hereby, granted and defendant shall go hence without day and shall recover of and from the plaintiff its costs herein to be taxed upon proper notice.